1  PATRICIA BARBOSA (SBN 125865)
   MARY J. LIM (SBN 272170)
2  **BARBOSA, METZ & HARRISON, LLP**
   139 Richmond Street
3  El Segundo, CA 90245
   Tel: (310) 414-9400
4  Fax: (310) 414-9200
   PBarbosa@bmhlegal.com
5  MLim@bmhlegal.com
6
7  Attorneys for Plaintiff,
   CHRISTIE RUDDER
8

9                **UNITED STATES DISTRICT COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11                                    SACV12 1075 JVS(CTPRx)
12  CHRISTIE RUDDER, an individual;   ) Case No.:
                                      )
13           Plaintiff,              ) **Civil Rights**
                                      )
14  vs.                              ) **COMPLAINT FOR INJUNCTIVE**
                                      ) **RELIEF AND DAMAGES:** FOR
15                                   ) DISABILITY DISCRIMINATION IN
    FRED'S MEXICAN CAFÉ the dba for  ) VIOLATION OF TITLE III OF THE
16  HUNTINGTON MOOSE, L.P.;          ) ADA AND CALIFORNIA'S CIVIL
    PIERSIDE PAVILION LLC;           ) RIGHTS STATUTES (Health & Safety
17  THEORYR PROPERTIES LLC; and      ) Code § 19955 *et seq.* and Civil Code §§
18  DOES 1 through 10, Inclusive,    ) 51, 54, and 54.1)
                                      )
19           Defendants.            ) **DEMAND FOR JURY TRIAL**
20                                   )
21  _____     )

22

23       Plaintiff CHRISTIE RUDDER ("Plaintiff") complains of Defendants FRED'S

24  MEXICAN CAFÉ the dba for HUNTINGTON MOOSE, L.P.; PIERSIDE

25  PAVILION LLC; THEORYR PROPERTIES LLC; and DOES 1 through 10,

26  Inclusive, (collectively, "Defendants"), and alleges as follows:

27

28

---

ADA (TIT. III) COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
Case No.                                                                    1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **INTRODUCTION**

1.      One of the principal goals of the Americans with Disabilities Act of 1990 ("ADA") is the integration of people with disabilities into the country's economic and social life.  42 U.S.C. § 12101(a).  Despite this long-standing mandate, Defendants – the owners, operators, lessors and/or lessees of the Pierside Pavilion, a four-level retail, dining, and office complex which overlooks the Huntington Beach Pier and Pacific Ocean, and Fred's Mexican Café, a restaurant located therein– have failed in their obligation to provide disabled persons like Plaintiff with full and equal access to their goods and services in violation of Title III of the ADA.  The Pierside Pavilion was originally constructed about the time the ADA was originally passed; and since then, has undergone major, multi-million dollar renovations, beginning in 2010.  In 2001, Fred's Mexican Café opened on the second floor of the Pierside Pavilion, and just last year, celebrated its 10-year anniversary at this location.

2.      On information and belief, Defendants failed to construct and/or renovate their public facilities in a readily accessible manner, and failed in their continuing obligation to remove readily achievable architectural barriers that prevent wheelchair users from being able to use and benefit from Defendants' public facilities in a full and equal manner as able-bodied persons.  Defendants have also failed to modify their discriminatory policies and practices to ensure that Plaintiff and other physically disabled persons can enjoy full and equal access to Defendants' goods and services.  In so doing, Defendants have also violated California civil rights laws, including Health and Safety Code § 19955 *et seq.*; California Code of Regulations Title 24-2 ("Title 24-2"); the Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code § 51; and the California Disabled Persons Act ("CDPA"), Cal. Civ. Code §§ 54, and 54.1.

3.      As a result of Defendants' discriminatory acts and omissions, Plaintiff has and will continue to suffer damages and be prevented and/or deterred from

accessing and using Defendants' goods, services, and facilities to the same extent as, and in a manner equal to, her able-bodied peers.  Through this lawsuit, Plaintiff's primary goal is to remove physical barriers and modify discriminatory policies that deter her and other mobility impaired persons from "full and equal" access to Defendants' public facilities as required by law and compensation for her injuries as the result of Defendants' discriminatory conduct and actions.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 for violations of the ADA, 42 U.S.C. § 12201 *et seq.*  Pursuant to supplemental jurisdiction, attendant and related causes of action, arising from the same facts, are also brought under California law, including, but not limited to, violations of California Health & Safety Code § 19955 *et seq.*, the Unruh Act, and CDPA.

5.     Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in the Central District and that Plaintiff's causes of action arose in the Central District.

## PARTIES

6.     Plaintiff CHRISTIE RUDDER is, and at all times relevant herein was, a qualified individual with a physical "disability" as defined under Department of Justice regulation 28 C.F.R. § 36.104 and California Government Code § 12926. Plaintiff is unable to independently stand or walk, and has limited range of motion in her arms as the result of injuries sustained in car accidents, and requires the use of a wheelchair for mobility.  Plaintiff is unable, due to her physical disability, to independently use public facilities that are not designed and/or constructed in compliance with applicable accessibility standards to accommodate disabled persons who require a wheelchair for mobility.  Plaintiff is, and at all times relevant hereto was, a resident of California.

7.     On information and belief, Defendants HUNTINGTON MOOSE, L.P. dba FRED'S MEXICAN CAFÉ; PIERSIDE PAVILION LLC; THEORYR PROPERTIES LLC; and DOES 1 through 10, inclusive are, and at all times relevant herein were, the owners, operators, lessors, and/or lessees of Fred's Mexican Café ("Fred's" or "Restaurant") and the Pierside Pavilion ("Center") located at 300 Pacific Coast Highway in downtown Huntington Beach, California and its related facilities.

8.     Plaintiff is informed and believes that each of the Defendants is the agent, ostensible agent, alter ego, master, servant, trustor, trustee, employer, employee, representative, franchiser, franchisee, lessor, lessee, joint venturer, parent, subsidiary, affiliate, related entity, partner, and/or associate, or such similar capacity, of each of the other Defendants, and was at all times acting and performing, or failing to act or perform, within the course and scope of such similar aforementioned capacities, and with the authorization, consent, permission or ratification of each of the other Defendants, and is personally responsible in some manner for the acts and omissions of the other Defendants in proximately causing the violations and damages complained of herein, and have participated, directed, and have ostensibly and/or directly approved or ratified each of the acts or omissions of each of the other Defendants, as herein described.  Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of Defendants DOES 1 through 10, inclusive are ascertained.

## FACTS UPON WHICH ALL CLAIMS ARE BASED

9.     Fred's Mexican Café is located at the Pierside Pavilion, a mixed-use retail, dining, office, and public parking complex, situated at the bustling corner of Main Street and Pacific Coast Highway, where visitors can enjoy its panoramic ocean views.  The Center was built as part of the renaissance of the city known as "Surf City USA," standing as a "front door to downtown"; and in 2010, the Center underwent major structural renovations to transform it from a six-screen movie

theatre to other public accommodations, including renovations to its two-level subterranean parking structure. Fred's opened in 2001, and it occupies a substantial portion of the Center's second level. Its website invites visitors to enjoy Fred's "relaxed atmosphere and amazing ocean views, friendly and attentive service and an extraordinary menu filled with delicious Mexican selections." At Fred's, guests can enjoy the "huge full service bar inside, as well as a beautiful outdoor patio bar." Fred's at the Center is one of five other Fred's Mexican Cafes, which are located throughout Southern California and Hawaii.

10. Fred's and the Center are "places of public accommodation" as defined under Title III of the ADA ("Title III"), 42 U.S.C. § 12181(7)(B) and (E), and California civil rights laws, Cal. Civ. Code §§ 51 and 54 *et seq.* and Health & Safety Code § 19955 *et seq.*

11. Plaintiff and other similarly situated, physically disabled persons who require the use of a wheelchair or other mobility device, are unable to access and use the goods, services, and facilities offered at the Center and Fred's on a "full and equal" basis unless they are brought into compliance with Title III, 42 U.S.C. § 12181 *et seq.*; Health & Safety Code § 19955 *et seq.*, and Title 24-2, all of which were enacted to ensure full and equal access for persons with disabilities in places of public accommodation. Plaintiff is a member of that portion of the public whose rights are protected by these laws.

12. During the two years prior to the filing of this Complaint and continuing to the date of filing of this Complaint, Plaintiff has made several trips to the Huntington Beach area. Plaintiff lives nearby and goes to the beach frequently. On the second Saturday of each month, she joins a cycling club with her friends, who also use wheelchairs for mobility, to go hand cycling at Bolsa Chica State Beach in Huntington Beach. On or about November 13, 2010 and again in the spring of 2011, Plaintiff visited Fred's with friends after cycling on the beach. Then, in the winter

1  beginning in 2011, Plaintiff visited Fred's on her own during one of her trips to

2  Huntington Beach.  Plaintiff particularly enjoys the Mexican foods offered at Fred's

3  and wishes to return to enjoy its tasty meals and beautiful ocean views.

4         13.    Plaintiff would have visited the Restaurant more, as she enjoys the

5  establishment's goods and services, but she has been deterred from doing so due to

6  the ongoing access issues and discriminatory policies she has experienced while

7  patronizing Fred's.  When Plaintiff has visited Fred's and the Center, she experiences

8  access barriers.

9                            **Pierside Pavilion**

10        14.    On information and belief, PIERSIDE PAVILION LLC; THEORYR

11  PROPERTIES LLC; and DOES 1 through 5 are the owners, lessors, and/or operators

12  of the facilities that make up the Center.

13        15.    On or about November 13, 2010, Plaintiff visited the Center to have a

14  meal at Fred's with three of her friends, who also use wheelchairs for mobility.

15  Plaintiff and her friends had just finished hand cycling along the beach, and because

16  the group wanted to get food and drinks, they decided to try Fred's for its good value

17  and view.

18        16.    Plaintiff has California disabled person license plates to permit her to

19  park in designated accessible parking spaces.  When she drove to Fred's, Plaintiff

20  could not find on-street parking, so she paid to park in the Center's subterranean

21  parking structure.  On information and belief, the designated accessible parking

22  spaces serving the Center are incorrectly located and configured for use by the

23  Center's public accommodations.  Specifically, all of the designated accessible

24  parking spaces are clustered on the first floor and do not provide access to Fred's or

25  other public accommodations in the Center.  While there is another elevator that

26  accesses the subterranean parking lot, and provides the access to Fred's, there are no

27  accessible parking spaces near this elevator, forcing anyone using the accessible

28

parking spaces to travel the length of the parking lot behind other cars in the vehicular way.  There is also no signage directing disabled persons to the elevator for Fred's Restaurant.

17.   <u>Parking</u>:  On information and belief, barriers relating to parking include, *but are not limited to*, designated accessible spaces that:

- are insufficient in number;
- missing signage with penalty fine information;
- do not have an accessible path of travel leading to the underground elevator which leads to Fred's;
- do not serve the second elevator for access to this section of the Center, including Fred's; and
- are not properly located, marked, or configured for disabled use.

18.   Once Plaintiff parked, it was hard to distinguish where the path of travel through the parking structure was, as there was no directional signage at the elevator or any other place.  Plaintiff and her friends wheeled to the only elevator in sight, the one closest to the designated accessible spaces, but it took them to a different restaurant on the second story, without a way to enter Fred's.  Disappointed and frustrated, they rode the elevator back down to the street level and wheeled out to Main Street to find a way to access Fred's.

19.   At street level, there is a sign pointing up to Fred's on the second story and a flight of stairs, but no sign for persons unable to climb the stairs.  The quartet of wheelchair users pondered out loud on how they could possibly get up to Fred's.  Just then, a stranger, who observed their situation and overheard their conversation, told them to go around the corner and pass through a small vendor's wares, to find the elevator that would lead them to Fred's.  While there is an accessible entrance from the street level, this entrance is obscured by Center vendors permitted to block this entrance with their wares.  As a result, Plaintiff and her friends could not see the

elevator from the street level, but followed the passerby's directions. The group eventually found the elevator inside the building and took it to Fred's.

20.   Site Accessibility:  On information and belief, there are other access barriers and policies that exclude and deter Plaintiff from enjoying full and equal access to and use of the same goods, services, facilities, privileges, advantages, and accommodations offered by the Center to the general public, including, *but not limited to*:

- inaccessible pedestrian paths of travel – including sidewalks, walkways, and curbs from the public right of way to the Center's facilities (For example, the Center's street-level vendors are allowed to encroach upon the sidewalks and walkways with their store displays, obscuring and narrowing the path of travel to Fred's.); and

- obstacles in the paths of travel – including sidewalks, walkways, curb ramps, and curbs – around, through, and between the Center's retailers and restaurants.

### Fred's Mexican Café: Barriers

21.   On information and belief, HUNTINGTON MOOSE, L.P. dba FRED'S MEXICAN CAFÉ and DOES 6 through 10 are the business owners and/or operators of Fred's within the Center.

22.   Entrance:  When Plaintiff arrived at the Restaurant with her three friends in wheelchairs, they approached the hostess, who appeared nervous as she greeted them and asked, "You're all here together?"  When they said they wanted to sit together, the hostess asked them to wait while she went to get the manager to determine where to seat Plaintiff and her friends.  It was crowded and Plaintiff and her friends felt uncomfortable with people standing around them while they had to wait because the hostess was not prepared for wheelchair patrons.

23.   Seating:  When the Restaurant's manager arrived, he looked and pointed

at a table chart and then took the hostess and told Plaintiff they would return.  After several minutes, the hostess returned and led them to the furthest back area of the patio, where no one else was seated, and which appeared to be closed.  On the way to their table, Plaintiff observed that the indoor seating of the Restaurant consisted of booths, and tables on elevated platforms, with high pedestal-style tables around the perimeter of the Restaurant.  Plaintiff and her friends could not sit at the elevated tables and booths, and even if a lower table were placed there, Plaintiff and her friends would still have felt segregated, as they would be at eye-level with the legs of all the other patrons.  All of these tables appeared to have pedestal bases, which block wheelchair users like Plaintiff from fully going under the table, resulting in having to sit forward to reach the table, or sit uncomfortably sideways.

24.    Eventually, Plaintiff and her friends were taken to one of the outdoor patios, the furthest from any other seating area, which is where the only accessible table they saw was located.  The "accessible" table had to be pulled away from the wall to accommodate four wheelchair users.  As a result, Plaintiff and her friends were seated in the path of travel for servers and persons returning to their tables.  At first, this was not a problem because there were no other patrons in this area, which made Plaintiff feel segregated; not to mention, the wait staff provided infrequent service because they were the only patrons in that section.  Later in the meal, however, as the lunch crowd began to fill the Restaurant, patrons were brought out to surrounding tables, and Plaintiff and her friends were repeatedly bumped or jostled by the servers and patrons.  Additionally, Plaintiff observed that patrons were allowed to smoke in this patio area, so Plaintiff had to inhale the secondhand smoke of people smoking nearby.  Plaintiff is especially sensitive to the effects of secondhand smoke, so Plaintiff asked a server if the Restaurant allowed smoking on the patio and if the server would ask the people smoking nearby to stop smoking.  To this, the server informed Plaintiff that Restaurant employees do not say anything when patrons

smoke on the patio.  On information and belief, Defendants do not enforce a no-smoking policy in this outdoor patio, and it is the only location where wheelchair users are seated.

25.   <u>Bar Area</u>:  During the meal, Plaintiff headed back into the Restaurant's interior to use the public restroom.  To go to and return from the restroom, Plaintiff had to travel between an area of raised tables and the bar area.  Because the path of travel there was too narrow with the patrons using the bar and nearby tables, Plaintiff had to ask others to stand up and/or move their chairs from the high tables and bar stools.  Plaintiff was embarrassed by the unwanted attention from having to bother strangers to accommodate her wheelchair.  On her way back to her table, Plaintiff observed what appeared to be a lowered portion of the bar counter in a darkened corner, opposite the side with the beachfront view.  If Plaintiff had wanted to sit at the Bar, she would have been directed to a space with no view of the ocean.  The lowered portion of the bar was near Fred's pool table, in the way of pool players and people standing around.  This section of the Bar was also being used by wait staff to hold drinks and dishes.  Also, from that position, Plaintiff would not be able to see the television screens set up in the bar area.  Based on her observations, when Plaintiff returned to Fred's by herself in the winter beginning in 2011 to enjoy a drink and a bite to eat, she was deterred from sitting in the bar area where she would have liked to socialize with the other patrons.

26.   <u>Public Restrooms</u>:  As Plaintiff neared Fred's public restroom, she needed to pass by the Restaurant's pool tables, where she had to wait until pool players were done with their shot before she could fit passed them.  Once inside Fred's public restroom, Plaintiff experienced additional barriers which include, *but are not limited to*:

- designated accessible stall that is incorrectly configured, including, *but not limited to*, a stall door that opens directly into the restroom's entry

door (This caused Plaintiff's knuckles to be smashed between the two doors during one of her visits.); coat hanger (This caused Plaintiff to be unable to reach to hang her purse.); a toilet paper dispenser incorrectly mounted directly below the grab bar (This made it extremely difficult for Plaintiff to use the grab bar to transfer on and off of the toilet without scraping her hands.); a toilet seat that is mounted too low (This made it difficult for Plaintiff to lift herself to transfer back into her wheelchair);

- restroom amenities and hardware that are incorrectly mounted and located, including, *but not limited to*:
  - o  the lavatories (e.g. – Because knee clearance was too low, Plaintiff was unable to roll under the sink, so she could not reach the soap dispenser.),
  - o  towel dispensers and soap dispensers (Plaintiff could not reach the soap dispenser in front of the sink because she could not roll under the sink, and she could not reach the soap dispenser located next to the sink because it was mounted too high.  The towel dispenser next to the soap dispenser was also too high, and when Plaintiff attempted to reach it, the lack of adjacent clear floor space forced Plaintiff to be positioned directly in the swing of the restroom entry door.  The other towel dispenser, located across from the sinks, is also too high, and there was a trashcan placed directly underneath the dispenser, further blocking Plaintiff's access to it. It is very important for Plaintiff to be able to reach the soap and towels because she needs her hands as sterile as possible before using her catheter; otherwise, she will be vulnerable to infections. Further, whenever the public toilet seat cover is soiled ahead of time, Plaintiff needs to use wet towels and soaped up towels to

wipe down the seat first.  She cannot simply use disposable seat covers because they can get in the way of her catheterizing.);

- lack of clear floor space in front of the towel dispensers and trashcans; and
- lack of stall entry door strike side clearance on the pull side of the door.

27.   On information and belief, the Restaurant has the following barriers in its public women's restroom that should also be removed as part of this action:

- incorrect and insufficient ISA signage; and
- an interior mat that was not securely attached to the floor.

28.   On information and belief, the men's public restroom in the Restaurant is also incorrectly configured and has barriers to persons with mobility disabilities that should be removed as part of this action rather than requiring serial lawsuits to make the facilities at Fred's readily accessible to and usable by persons with physical disabilities.  These barriers include, *but are not limited to*:

- incorrect and insufficient ISA signage;
- lack of strike side clearance on the push side of the entry door;
- insufficient knee space provided at the front face of the lavatory counter;
- lack of accessible path of travel provided to the urinals;
- insufficient clear floor space in front of the lowered urinal;
- insufficient turnaround space in the restroom; and
- designated accessible stall that is incorrectly configured, including, *but not limited to*, insufficient turnaround space in the accessible stall; stall door hardware for the accessible stall that requires pinching and twisting to operate; an incorrectly mounted and configured flush valve, grab bars, and coat hook; insufficient transfer space at the side of the toilet; and transfer space in front of the toilet that is obstructed by a column.

29.   Since the time Plaintiff visited Fred's on or about November 13, 2010,

Plaintiff has returned a number of times in the spring of 2011 and the winter beginning in 2011. On these subsequent visits, she noticed that there were two lower tables located along the covered outdoor patio area. However, due to the overcrowding of tables in that area, there was insufficient space for a wheelchair user to pull up and use the lowered tables.

30.    Additionally, Plaintiff noticed that two lowered tables were added in the Restaurant, abutted against a wall that surrounds raised alcove seating. On information and belief, these two tables do not provide accessible clear floor space for wheelchair seating. Plaintiff observed that these tables were isolated from other seating areas, and were next to the kitchen and in the wait staffs' line of waiting to pick up their food orders. As a result, Plaintiff was deterred from sitting there because the area was hot and had a constant stream of servers and kitchen smells.

31.    During each of her visits to Fred's, Plaintiff has been seated in the same outdoor patio section where smoking is permitted, and which is segregated to the furthest part of the Restaurant. Persons with disabilities are segregated from the other patrons of the Restaurant until other areas are filled. Plaintiff has had to go into the Restaurant to ask for service due to being isolated from the other patrons.

32.    Plaintiff wants to return to Fred's and the Center in the future to eat and shop and perhaps park her vehicle. Plaintiff enjoys dining at Fred's, and the Huntington Beach location is conveniently located near her home, in an area she often frequents, and is directly across from the Pier and ocean.

### Fred's Mexican Café: Modification of Policies

33.    On information and belief, Defendants have failed to reasonably modify their policies and procedures to ensure that they provide their goods, services, benefits, and facilities in a manner that is readily accessible to and usable by disabled visitors in a non-discriminatory and safe manner, such as are offered to able-bodied visitors, but not available to Plaintiff. Discriminatory policies affecting disabled

visitors, include, *but are not limited to*: 1) use of a segregated area (which is also used for smoking patrons) for seating persons with disabilities; 2) placing lowered, accessible tables in the least desirable space in the Restaurant; 3) failure to maintain accessible seating in all differing areas of the Restaurant (e.g. – the indoor, covered outdoor, uncovered outdoor, and bar areas of the Restaurant); and 4) failure to install directional signage to the Center's second story and Fred's entrance from the parking elevator and the street entrance.

34.     Until the barriers at the Center and Fred's are removed and policies and practices modified, Plaintiff will continue to suffer discrimination by being excluded and deterred from returning to the Center and Fred's, by herself or with her friends, and will continue to be denied full and equal access to and use of the same goods, services, facilities, privileges, advantages, and accommodations offered by Defendants to the general public.

35.     As the result of Defendants' acts and omissions, as herein described, Plaintiff was, and will continue to be denied full and equal access to the "goods, services, facilities, advantages, or accommodations" offered by the Center and Fred's and has suffered discrimination, humiliation, pain, emotional distress, and embarrassment all to her damage.  The ongoing nature of Defendants' discrimination constitutes an ongoing violation, and unless enjoined by this Court, will result in ongoing and irreparable injury.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION:

### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT – TITLE III

### (42 U.S.C. § 12101 *et seq.*)

36.     Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in Paragraphs 1 through 35 of this Complaint, and incorporates them herein as if separately repled.

37.     In 1990, the United States Congress found that laws were needed to more fully protect "some 43 million Americans with one or more physical or mental disabilities; that historically society has tended to isolate and segregate individuals with disabilities," and that "such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem; that the nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living and economic self-sufficiency for such individuals; and that the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous."  42 U.S.C. § 12101(b).

38.     Congress stated as its purpose in passing the Americans with Disabilities Act:

It is the purpose of this act:

>   (1)     to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;
>
>   (2)     to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;
>
>   (3)     to ensure that the Federal government plays a central role in enforcing the standards established in this act on behalf of individuals with disabilities; and
>
>   (4)     to invoke the sweep of Congressional authority, including the power to enforce the 14th Amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.  42 U.S.C. § 12101(b).

39.     As part of the ADA, Congress passed "Title III – Public Accommodations and Services Operated by Private Entities." 42 U.S.C. § 12181 *et*

*seq.* Among "private entities" which are considered "public accommodations" for purposes of this title are "establishments serving food or drink," "shopping center," "sales establishments," and "other service establishments." 42 U.S.C. § 12181(7)(B), (E), and (F).

40.    Title III of the ADA provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

41.    Defendants have discriminated against Plaintiff on the basis of her disability in violation of Title III of the ADA and its implementing regulations. Defendants' discriminatory conduct includes, but is not limited to:

A.    Discriminatory exclusion and/or denial of goods, services, facilities, privileges, advantages, accommodations, and/or opportunities;

B.    Provision of goods, services, facilities, privileges, advantages, and/or accommodations that are not equal to those afforded non-disabled individuals;

C.    Failing to make reasonable modifications in policies, practices or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities;

D.    Failing to design and construct facilities built for first occupancy after January 26, 1993 so that they are readily accessible to and usable by individuals with disabilities in accordance with the ADA Standards for Accessible Design (ADA Standards), 28 C.F.R. p. 36, app. A.; 42 U.S.C. § 12183(a)(1); 28 C.F.R. §§

36.401 and 36.406(a);

E.  Since January 26, 1992, failing to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facilities are readily accessible to and usable by individuals with disabilities in accordance with the ADA Standards, 42 U.S.C. § 12183(a)(2), 28 C.F.R. §§ 36.402, 36.403, and 36.406(a); and

E.  Since July 26, 1991, failing to comply with the ongoing obligation to remove barriers, and/or provide path of travel upgrades to remove barriers at facilities where such removal is "readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv), 28 C.F.R. § 36.304.

Pursuant to the remedies, procedures, and rights set forth in 42 U.S.C. §§ 12188 and 12205, Plaintiff prays for judgment as set forth below.

## SECOND CAUSE OF ACTION:
### CAL. HEALTH & SAFETY CODE § 19955 *et seq.*

42.  Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in Paragraphs 1 through 41 of this Complaint, and incorporates them herein as if separately repled.

43.  California Health & Safety Code § 19955 *et seq.* was enacted "[t]o ensure that public accommodations or facilities constructed in this state with private funds adhere to the provisions of Chapter 7 (commencing with § 4450) of Division 5 of Title I of the Government Code." Such public accommodations are defined as any "building, structure, facilities, complex, or improved area that is used by the general public…," and includes shopping centers, Cal. Health & Safety Code § 19955.5; restaurants and related sanitary facilities, Cal. Health & Safety Code § 19955; and curbs and sidewalks intended for public use, Cal. Health & Safety Code § 19956.5.

44.  On information and belief, Fred's and the related facilities at the Center have undergone construction and/or alterations after January 1, 1982 that triggered

1   access requirements pursuant to Title 24-2.  Pursuant to Title 24-2, compliance with

2   disabled access building standards and specifications is required whenever public

3   accommodations, such as Fred's and the related facilities at the Center, undergo an

4   "alteration, structural repair or addition."  On information and belief, Defendants did

5   not comply with the access requirements, which Title 24-2 imposes on renovated and

6   remodeled facilities, including, *but not limited to*, the requirements for accessible

7   parking, accessible pedestrian paths of travel, and accessible seating.

8        Pursuant to the remedies, procedures, and rights set forth in Cal. Health &

9   Safety Code § 19953, Plaintiff prays for judgment as set forth below.

### THIRD CAUSE OF ACTION:
### UNRUH CIVIL RIGHTS ACT
### (CAL. CIV. CODE § 51 *et seq.*)

13   45.    Plaintiff repleads and incorporates by reference the allegations

14   contained in Paragraphs 1 through 44 of this Complaint as if fully set forth herein.

15   46.    The Center and Fred's are business establishments and, as such, must

16   comply with the provisions of the Unruh Act.  Cal. Civ. Code § 51 *et seq.*

17   47.    The Unruh Act guarantees, *inter alia*, that persons with disabilities are

18   entitled to full and equal accommodations, advantages, facilities, privileges, or

19   services in all business establishments of every kind whatsoever within the

20   jurisdiction of the State of California.  Cal. Civ. Code § 51(b).

21   48.    The Unruh Act also provides that a violation of the ADA, or of

22   California state accessibility regulations, is a violation of the Unruh Act.  Cal. Civ.

23   Code § 51(f).

24   49.    Defendants have violated the Unruh Act by, *inter alia*, denying, aiding,

25   or inciting the denial of Plaintiff's rights to full and equal use of the accommodations,

26   advantages, facilities, privileges, or services offered at Fred's and the Center.

27   50.    Defendants have also violated the Unruh Act by denying, aiding, or

28

inciting the denial of Plaintiff's rights to equal access arising from the provisions of the California state accessibility regulations and the ADA.

Pursuant to the remedies, procedures, and rights set forth in Cal. Civ. Code § 52, Plaintiff prays for judgment as set forth below.

**FOURTH CAUSE OF ACTION:**

**CALIFORNIA DISABLED PERSONS ACT**

**(CAL. CIV. CODE § 54 *et seq.*)**

51. Plaintiff repleads and incorporates by reference the allegations contained in Paragraphs 1 through 50 of this Complaint as if fully set forth herein.

52. The Center and Fred's are places of public accommodation and/or places to which the general public is invited and, as such, is obligated to comply with the provisions of the CDPA. Cal. Civ. Code § 54 *et seq.*

53. The CDPA guarantees, inter alia, that persons with disabilities have the same right as the general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, public facilities, and other public places. Cal. Civ. Code § 54.

54. The CDPA also guarantees, inter alia, that persons with disabilities are entitled to full and equal access as other members of the general public to accommodations, advantages, facilities, and privileges of covered entities. Cal. Civ. Code § 54.1(a)(1).

55. The CDPA also provides that a violation of the ADA or of California state accessibility regulations is a violation of the CDPA. Cal. Civ. Code § 54.1(d).

56. Defendants have violated the CDPA by, inter alia, denying and/or interfering with Plaintiff's right to full and equal access as other members of the general public to the accommodations, advantages, or facilities of the Center and Fred's.

57. Defendants have also violated the CDPA by denying and/or interfering

with the Plaintiff's rights to equal access arising from the provisions of the California state accessibility regulations and the ADA.

## **PRAYER FOR RELIEF:**

WHEREFORE, Plaintiff respectfully requests:

1.      That this Court issue an injunction pursuant to Title III of the ADA and Plaintiff's related state law claims:

        A.      Ordering Defendants to alter their facilities to make such facilities readily accessible to and usable by individuals with disabilities;

        B.      Ordering Defendants to modify their policies and practices to provide individuals with disabilities full and equal access to their goods and services; and

        C.      Prohibiting operation of Defendants' public accommodations and facilities until they provide full and equal access to physically disabled persons, and requiring that such access be immediately provided.

2.      That this Court award general, compensatory, and statutory damages pursuant to the Unruh Act [Cal. Civ. Code § 51] and/or in the alternative the California Disabled Persons Act [Cal. Civ. Code § 54.1] in an amount within the jurisdiction of this Court, and that these damages be trebled according to statute;

3.      That this Court award special and consequential damages according to proof;

4.      That this Court award attorneys' fees, litigation expenses and costs of enforcing this civil rights action pursuant to Title III of the ADA, 42 U.S.C. § 12205, California Civil Code §§ 52 and 55, California Health & Safety Code § 19953, and California Code of Civil Procedure § 1021.5; and

5.      Such other and further relief as the Court may deem just and proper.

Dated: July 2, 2012

**BARBOSA, METZ & HARRISON, LLP**

By: _____
PATRICIA BARBOSA
MARY J. LIM
Attorneys for Plaintiff, CHRISTIE RUDDER

1

## **DEMAND FOR JURY TRIAL**

2
Plaintiff hereby demands a jury for all claims for which a jury is permitted.

3

4
Dated: July 2, 2012                                **BARBOSA, METZ & HARRISON, LLP**

5

6

7
By:   _P Barbosa_____

8
PATRICIA BARBOSA
MARY J. LIM

9
Attorneys for Plaintiff, CHRISTIE RUDDER

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge James V. Selna and the assigned discovery Magistrate Judge is Jean P. Rosenbluth.

The case number on all documents filed with the Court should read as follows:

## SACV12- 1075 JVS (JPRx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

====================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [X] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.

PATRICIA BARBOSA (SBN 125865)
MARY J. LIM (SBN 272170)
BARBOSA, METZ & HARRISON, LLP
139 Richmond Street
El Segundo, CA 90245
Tel: (310) 414-9400; Fax: (310) 414-9200

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTIE RUDDER, an individual; | **CASE NUMBER** |
| PLAINTIFF(S) | SACV12 1075 JVC (JPRx) |
| v. | |
| FRED'S MEXICAN CAFÉ the dba for HUNTINGTON MOOSE, L.P.; (See Attachment for Additional Parties) | **SUMMONS** |
| DEFENDANT(S). | |

TO:     DEFENDANT(S):

     A lawsuit has been filed against you.

     Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Patricia Barbosa & Mary J. Lim_____, whose address is _139 Richmond Street, El Segundo, CA 90245_____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

           JUL - 2 2012

Clerk, U.S. District Court

Dated: _____

By: _____
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (10/11)                                                 **SUMMONS**

## <u>ADDITIONAL PARTIES ATTACHMENT</u>

Defendants Continued:

PIERSIDE PAVILION LLC; THEORYR PROPERTIES LLC; and DOES 1
through 10, Inclusive,

PATRICIA BARBOSA (SBN 125865)
MARY J. LIM (SBN 272170)
BARBOSA, METZ & HARRISON, LLP
139 Richmond Street
El Segundo, CA 90245
Tel: (310) 414-9400; Fax: (310) 414-9200

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| CHRISTIE RUDDER, an individual;<br><br>PLAINTIFF(S)<br><br>v.<br><br>FRED'S MEXICAN CAFÉ the dba for HUNTINGTON MOOSE, L.P.; (See Attachment for Additional Parties)<br><br>DEFENDANT(S). | CASE NUMBER<br><br>SACV12 1075 JVS (JPRx)<br><br><br>**SUMMONS** |
| --- | --- |

TO:     DEFENDANT(S):

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney,  Patricia Barbosa & Mary J. Lim , whose address is 139 Richmond Street, El Segundo, CA 90245 . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.


JUL - 2 2012

Clerk, U.S. District Court

Dated: _____

JULIE PRADO

By: _____

Deputy Clerk

1154

*(Seal of the Court)*


*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

# ADDITIONAL PARTIES ATTACHMENT

Defendants Continued:

PIERSIDE PAVILION LLC; THEORYR PROPERTIES LLC; and DOES 1 through 10, Inclusive,

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) CHRISTIE RUDDER, an individual; | DEFENDANTS FRED'S MEXICAN CAFÉ the dba for HUNTINGTON MOOSE, L.P.; PIERSIDE PAVILION LLC; THEORYR PROPERTIES LLC; and DOES 1 through 10, Inclusive, |
|---|---|
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) PATRICIA BARBOSA (SBN 125865); MARY J. LIM (SBN 272170) BARBOSA, METZ & HARRISON, LLP; 139 Richmond Street. El Segundo, CA 90245. Tel: 310-414-9400; Fax: 310-414-9200 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes   ☑ No   ☐ MONEY DEMANDED IN COMPLAINT: $_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Denial of civil rights of disabled persons in violation of Title III of The ADA AND California Civil Rights Statutes (42 U.S.C. § 12182 et seq).

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | REAL PROPERTY | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 210 Land Condemnation | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | IMMIGRATION | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 245 Tort Product Liability | ☐ 290 All Other Real Property | ☐ 465 Other Immigration Actions | | |
| | ☐ 290 All Other Real Property | | | | |

(☑ 446 American with Disabilities - Other is checked)

SACV12 1075

**FOR OFFICE USE ONLY:**   Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No   ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or
                               ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
                               ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
                               ☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
   **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X.   SIGNATURE OF ATTORNEY (OR PRO PER):  *P Barbosa*                **Date** July 02, 2012

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |